# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| AMY COWAN, personal representative of the Christopher Cowan Estate, on behalf of the next-of-kin of CHRISTOPHER COWAN, deceased,<br>　　　　　　　　　　Plaintiff,<br><br>vs.<br><br>GENERAL MOTORS CORPORATION,<br><br>　　　　　　　　　　Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)   Case No. 06-1330-MLB<br>)<br>)<br>)<br>)<br>) |

## **ORDER**

Before the Court is Defendant General Motors' Motion for Protective Order. (Doc. 14.) Plaintiff responded, (Doc. 16), and Defendant replied (Doc. 17). The parties do not disagree as to the appropriateness of a Protective Order in this case for trade secrets and confidential research and commercial information. (Doc. 14 at pg. 1; Doc. 16 at pg. 1.) Defendant's motion merely requests that the Court address three issues about which the parties have been unable to agree. (Doc. 15 at pg. 2.) Having reviewed the submissions of the parties and exhibits thereto, the Court is prepared to rule on Defendant's motion.

1

## BACKGROUND

Plaintiff is the personal representative of decedent Christopher Cowan's estate. She filed her Complaint on November 2, 2006, bringing products liability claims resulting from a one-vehicle rollover accident in which the decedent was killed. (Doc. 1.)

Defendant has filed a Motion for Protective Order to govern "the disclosure and handling of trade secrets and other confidential research, development or commercial information to be produced by GM in this matter." (Doc. 14) While Plaintiff is willing to agree to a protective order to "facilitate discovery," she "does not and will not agree in advance" as to the confidential status of any documents to be produced in this litigation. (Doc. 16 at pg. 1.) She does agree that the Court should address the three issues identified by Defendant: (1) the status of "summaries" of Defendant's confidential information under the Protective Order; (2) the procedure for distributing Defendant's confidential information to other attorneys in similar cases; and (3) the disposition of confidential documents at the end of the litigation. (Doc. 15 at pg. 2, Doc. 16 at pg. 2.)

## DISCUSSION

Fed.R.Civ.P. 26(b)(1) "allows broad discovery, not only of 'any matter, not privileged, which is relevant to the subject matter involved in the pending action,' but also of matters that appear 'reasonably calculated to lead to the discovery of admissible evidence.'" ***Gillard v. Boulder Valley School Dist.***, 196 F.R.D. 382, 385 (D.Colo. 2000).

> Pretrial discovery that is simply exchanged between the parties is not a public component of a civil trial. *See*, *e.g.*, ***Seattle Times Co. v. Rhinehart***, 467 U.S. 20, 33 (1984) ("pretrial depositions and interrogatories are not public components of a civil trial . . . and, in general, they are conducted in private as a matter of modern practice"). There is thus no presumed right of public access to the discovery process or the fruits of discovery in the hands of a party. However, . . . a party is not prohibited from voluntarily disclosing any information received during discovery unless the party has agreed otherwise or unless the court, upon a showing of good cause, enters a protective order pursuant to Fed. R. Civ. P. 26(c) or its state equivalents.

Laurie Dore, Ronald J. Hedges, Kenneth J. Withers, *Best Practices Addressing Protective Orders, Confidentiality & Public Access in Civil Cases*, THE SEDONA GUIDELINES, at 5, http://www.thesedonaconference.org/ (March 2007). As an initial matter, the Court finds Defendant has established good cause for seeking to protect documents that are proven to be "trade secrets and other confidential research, development or commercial information." The Court will now address

the three issues upon which the parties were unable to reach an agreement.

### A. Summaries of Confidential Information.

Defendant argues that the Protective Order should encompass "summaries prepared from confidential documents produced pursuant to the Protective Order." (Doc. 15 at pg. 3.) Defendant contends that allowing Plaintiff to summarize confidential information, and then distribute such summaries, "would defeat the purpose of the protective order, and would make GM's confidential information available to its competitors and the general public." *Id*. Plaintiff counters that the term "summaries" is "vague" and that Defendant "has not offered a definition to narrow the term's scope." (Doc. 16 at pg. 4.) Plaintiff further argues that Defendant's proposed language is "over-inclusive, unnecessary, and an attempt to control Plaintiff's work product." *Id*. Plaintiff primarily seems to be concerned that Defendant's unstated definition of the term "summary" will include

> handwritten notes prepared by attorneys and paralegals when reviewing materials for trial preparation. Clearly, these materials would constitute attorney work-product which GM has no right to control or otherwise claim that Plaintiff's work-product is the subject of a Protective Order.

(*Id*. at pg. 4-5.) Defendant replies, "[i]f otherwise confidential documents can lose their protected status just because an attorney rewrites them on a yellow notepad, protective orders will be worthless." (Doc. 17, at pg. 2.)

4

The Court can sympathize with the concerns raised by both parties. Clearly, the very purpose of the Protective Order would be circumvented if Plaintiff's counsel were free to merely recopy or succinctly summarize the substance of Defendant's proprietary information and then do with those documents as they see fit. On the other hand, the word "summary" is somewhat vague. It is commonly defined as "a short restatement of the main points (as of an argument) for easier remembering, for better understanding, or for showing the relation of the points." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2289 (1986). Even this definition, however, seems somewhat broad and subject to interpretation.

The Court agrees that in order to serve its intended purpose, the protective order should cover "summaries" of any documents that are themselves protected from disclosure. By "summaries," the Court intends the order to cover any document which quotes verbatim from a confidential document or which restates the substance or content of the confidential document. It does not, however, include such items as attorney notes or letters to experts which merely identifies a confidential document by category, *e.g.,* "a rollover test of _____ vehicle conducted on _____ date, etc., or which discuss the legal consequences or ramifications of such documents. The Court is confident that counsel, as officers of the Court, will be able to identify a factual summary that is basically a

reproduction of a document covered by the Protective Order, which also shall be subject to the Protective Order.

To the extent that counsel seeks to protect their "handwritten notes prepared by attorneys and paralegals when reviewing materials for trial preparation" or any documents written by defense counsel containing substantive legal analysis (Doc. 16 at 4), counsel should be careful not to quote from or effectively reproduce the substance of the document. Because Plaintiff's counsel has expressed concern about the sanctity of such documents, Plaintiff's counsel is admonished not to waive the privilege by providing such documents to third parties such as other counsel and/or individuals other than Plaintiff.

Defendant's Motion, in regard to the Protective Order encompassing "summaries" of documents, is hereby **GRANTED in part** and **DENIED in part** as stated above.

### B.     Distribution to Other Counsel.

Defendant has stated that it is "not opposed to the distribution of its confidential information to other plaintiffs' counsel handling similar claims." (Doc. 15, at pg. 3.) Rather, it is only concerned with Plaintiff's suggested method of distribution. In Defendant's initial proposed Protective Order, any attorney involved in other litigation would be required to contact GM's counsel, who would

then determine if such other litigation involved a "substantially similar" product and issues. If so, GM's counsel would have the option

> (1) to provide such other attorney with copies of the confidential documents or materials subject to a protective order to preserve their confidentiality, or (2) to authorize plaintiff's counsel in this case to make the confidential items available to such other attorney, provided that the other attorney first executes the affidavit attached to this Order as Exhibit A, agreeing to be bound by the terms of this Protective Order.

(Doc. 15, Exh. 1, at pg. 3.) Any such executed affidavit would be "maintained by plaintiff's counsel in this case, with a copy provided to defendant GM's counsel before any confidential items are made available to such other attorney." *Id.*

Pursuant to Plaintiff's proposed Protective Order, information deemed confidential could be "disclosed to any attorney representing plaintiffs and the experts and consultants retained by plaintiffs or their attorneys" if such other litigation involved a "substantially similar" product and issues and if such attorney executed an affidavit "agreeing to be bound by the terms" of the Protective Order to be entered in this case. (Doc. 16, Exh. B, pg. 3.) Plaintiff's counsel in this case would also maintain the affidavits, but defense counsel would take a much less active role in the dissemination of confidential information.

> The executed affidavit shall be sent by plaintiff's counsel to defense counsel in this case for confirmation that such other attorney is representing a plaintiff in 'other

7

> litigation involving a substantially similar product and issues.' If no objection by defense counsel is made within 15 days, the documents and materials will be [distributed] to other such attorneys according to the terms of the Protective Order.

(Doc. 16, Exh. B, pg. 3.)

Defendant is concerned about the "possibility of inappropriate distribution of confidential data following misdirected e-mail or other correspondence that fails to reach GM's attorneys, and therefore fails to provide notice." (Doc. 17, at pg. 3.) In the Court's opinion, the likelihood of relevant e-mail or correspondence being misdirected seems minimal. Important commercial contracts have long provided for notice to the parties by mail, telegram etc., which may trigger termination of the agreement or other serious consequences. The written notice contemplated by Plaintiff's version of the protective order language is not uncommon or unusual.

On the other hand, Plaintiff has offered no valid reason why defense counsel should not be allowed to take a more active role in the potential dissemination if Defendant's own confidential information. Further, the Court does not see how the method for dissemination to counsel in similar cases would assist Plaintiff in prosecuting the present case. Even in cases such as the present one in which there is or may be a public interest in the information at issue, "[i]t does not necessarily follow . . . that a litigant has an unrestrained right to disseminate information that

has been obtained through pretrial discovery." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 31, 104 S.Ct. 2199, 2206-07, 81 L.Ed.2d 17(1984).

The Court therefore finds that the procedure proposed by Defendant is a reasonable and appropriate way to allow the information to be shared while protecting Defendant's proprietary interest in the documents. As such, the Court **GRANTS** Defendant's Motion in regard to paragraph 4 of the proposed Protective Order. The Court suggests that Defendant identify the specific person or specific office address to which the contact or inquiry is to be sent should be clearly stated in the protective order. Defendant's use of the somewhat generic phrase "GM's Minneapolis counsel" could result in inquiries being shuffled around without a timely response. Because Defendant is being allowed to exercise more control over the process, it must exercise that control timely and in good faith.

**C.     Disposition of Confidential Documents**.

The final issue on which the parties disagree is the disposition of confidential documents at the conclusion of the case. Defendant's version of the Protective Order requires that such materials either be destroyed or returned to defense counsel. (Doc. 15, Exh. 1, pg. 5.) Defendant contends that it "should be allowed to 'close the books' on this case when it is done" and that Plaintiff has "no legitimate need" for the materials after conclusion of this litigation. *Id*.

Plaintiff, on the other hand, argues that if it must destroy or return the documents, it "thwarts the purpose of the sharing provision that GM has already agreed to." (Doc. 16, at pg. 6.) Plaintiff also contends that she has "legitimate interests" in both "assisting other such attorneys in discovery of relevant information where they have a claim involving 'a substantially similar product and issues'" and in "maintaining discovered documents and material so that they may be preserved and not otherwise destroyed or lost . . ." *Id*. Defendant replies that "[a] products liability case is not a permanent easement allowing perpetual access to the defendant's confidential records." (Doc. 17, at pg. 3.) Defendant also points out that Plaintiff has not articulated the basis for her supposed "legitimate interest" in retaining the documents.

The Court recognizes the public policy benefit of potentially sharing documents with attorneys involved in litigation of a similar product with similar issues. This may further the policies outlined in Fed. R. Civ. P. 1 by preventing the need for every litigant to repeat and multiply the same discovery procedures in every other similar action. *See* **Zapata v. IBP, Inc.,** 160 F.R.D. 623, 628 (D. Kan. 1993). While this sharing may be beneficial and cost-efficient, there is a limit to the Court's authority to create a facility for dissemination of information to private parties. *See e.g.*, **Wyeth Laboratories v. U.S. Dist. Ct. for D. Kan.,** 851 F. 2d 321,

10

324 (10th Cir. 1988). The Court is also cognizant of Defendant's unwillingness to have "to monitor this file for [confidentiality] purposes indefinitely."

Although Plaintiff's counsel has not specifically raised the argument, the Court recognizes the value of counsel maintaining the case files in their entirety until the statute of limitations has expired on any potential legal malpractice claim arising out of the conduct of this litigation. As such, the Court will allow Plaintiff's counsel to retain possession of any confidential documents submitted by Defendant pursuant to the discovery process in this case for a period of two years following the final termination of the present litigation. *See* K.S.A. § 60-513. At that time, Plaintiff must destroy or return to Defendants all documents deemed confidential pursuant to the Protective Order. During that period, any party would have the right to seek to re-open this case to enforce or request modification, if appropriate, of the protective order entered in this case.

Defendant's Motion is **GRANTED in part** and **DENIED in part** as to the disposition of confidential documents as stated above.

Having ruled on the three issues identified by the parties, the Court is hopeful that the parties will now be able to revise and forward to the court for

approval an appropriate protective order.[1]  However, the Court is somewhat concerned by Defendant's statements in its reply that no agreement was reached as to a protective order and changes in one part of the order may have an impact on other parts.  (Doc. 17 at 2.)  This statement seems somewhat at odds with Defendant's representation in its initial brief that "plaintiff and GM have not reached agreement on *three specific terms of the order*." (Doc. 15 at 1) (emphasis added).  After receipt and review of this Memorandum and Order, counsel are to meet and confer about the finalization of a protective order and advise the Court accordingly.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Protective

---

[1]  The Court acknowledges Defendant's argument that Plaintiff has waived any objection to the proffered protective order by failure to file a response to the motion for protective order within the time set by local rules.  (Doc. 17 at 1.)  The Court believes that it is more appropriate to resolve this issue on the merits and thereby denies Defendant's request to treat the motion for protective order as an uncontested motion.

Order (Doc. 14) is **GRANTED in part** and **DENIED in part** pursuant to the terms of this Order.

    **IT IS SO ORDERED**.

Dated at Wichita, Kansas, on this 19th day of June, 2007.

                   s/  DONALD W. BOSTWICK
                  DONALD W. BOSTWICK
                  United States Magistrate Judge